The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., SECOND AMENDMENT FOUNDATION, INC., ADRIAN J. COOMBES, ROELOF KROES, PHILIP GRADY, | No. C08-1613RSM |
| Plaintiffs | MOTION AND MEMORANDUM FOR PRELIMINARY INJUNCTION FED. R. CIV. P. 65 |
| v. | ORAL ARGUMENT REQUESTED |
| STATE OF WASHINGTON, LIZ LUCE, DIRECTOR, DEPARMENT OF LICENSING and PAUL D. AYERS, CHIEF OF POLICE ISSAQUAH POLICE DEPARTMENT, | **NOTE ON MOTION CALENDAR JANUARY 23, 2009** |
| Defendants. | |

Plaintiffs National Rifle Association of America, Inc., *et al.*, by counsel, pursuant to

Rule 65, Fed. R. Civ. P., hereby move this Court to issue a preliminary injunction requiring

Defendant Director of Licensing Liz Luce forthwith to renew or issue alien firearm licenses to

Plaintiffs Adrian J. Coombes, Philip Grady, and such other lawful permanent resident aliens

who may apply pursuant to RCW § 9.41.170.  Plaintiffs further move the Court to issue a

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 1

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

1  preliminary injunction restraining Defendant Police Chief Paul D. Ayers from enforcement of

2  RCW § 9.41.170 and RCW § 9.41.070(4) as applied to lawful permanent resident aliens.

3  **Introduction**

4       The individual Plaintiffs are lawful permanent resident aliens who own firearms.

5  Washington makes it a felony for an alien to possess a firearm without an Alien Firearm

6  License issued by the Director of Licensing.  However, she refuses to issue such licenses.

7  Coombes' license expires on February 19, 2009, and Grady is unable even to apply for a

8  license.  Plaintiffs thus seek a preliminary injunction requiring Defendant Luce forthwith to

9  issue said licenses.  In the alternative, a preliminary injunction is sought against enforcement

10  of RCW § 9.41.170, which makes it a felony for a non-U.S. citizen to possess a firearm

11  without a license, and RCW § 9.41.070(4), which requires such license to qualify for issuance

12  of a license to carry a concealed pistol.

13       Washington law and its application here violate the right of lawfully admitted resident

14  aliens to keep and bear arms as guaranteed by the Second and Fourteenth Amendments to the

15  U.S. Constitution, denies them the equal protection of the laws under the Fourteenth

16  Amendment, and denies them the full and equal benefit of all laws and proceedings for the

17  security of person and property as is enjoyed by citizens as provided by 42 U.S.C. § 1981(a).

18       Plaintiffs Coombes, Kroes, and Grady are aliens lawfully admitted into the United

19  States for permanent residence.  Declarations of Adrian J. Coombes ("Dec. Coombes,")

20  Roelof Kroes ("Dec. Kroes"), and Philip Grady (Dec. Grady), ¶ 1 of each.  Plaintiffs National

21  Rifle Association ("NRA") and the Second Amendment Foundation ("SAF") have numerous

22

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 2

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1    members in the State of Washington, including lawful resident aliens. Declaration of Chris

2    W. Cox ("Dec. Cox), ¶ 3; Declaration of Alan M. Gottlieb ("Dec. Gottlieb"), ¶ 4.

3       Defendant Liz Luce is the Director, Department of Licensing, State of Washington.

4    Answer ¶ 8. Defendant Paul D. Ayers is the Chief of Police of the municipality of Issaquah

5    Washington, where Coombes resides, and as such enforces State law and is in charge of

6    issuing licenses to carry concealed pistols.

7                          **Statutory Background**

8       Plaintiffs are "lawfully admitted for permanent residence," which means that each has

9    been "lawfully accorded the privilege of residing permanently in the United States as an

10   immigrant in accordance with the immigration laws . . . ." 8 U.S.C. § 1101(a)(20). Aliens

11   with criminal records are inadmissible. 8 U.S.C. § 1182(a)(2).[1]

12      Revised Code of Washington ("RCW") § 9.41.170 provides in part:

13      (1) It is a class C felony for any person who is not a citizen of the United States
       to carry or possess any firearm, without first having obtained an alien firearm
14      license from the director of licensing. In order to be eligible for a license, an
       alien must provide proof that he or she is lawfully present in the United States,
15      which the director of licensing shall verify through the appropriate authorities.
       . . .
16      (2) . . .
       (b) Before issuing an alien firearm license . . ., the director of licensing shall
17      ask the local law enforcement agency of the jurisdiction in which the alien
       resides to complete a background and fingerprint check to determine the alien's
18      eligibility under RCW 9.41.040 to own, possess, or control a firearm. The law
       enforcement agency shall complete a background check within thirty days after
19      the request. . . .

20

21 [1]   The application for an immigrant visa must include a certification by foreign police authorities stating what
their records show concerning the immigrant. 8 U.S.C. § 1202(b). The Department of State searches for any
22   criminal history records for a visa applicant in the National Crime Information Center's Interstate Identification
Index (NCIC-III), Wanted Persons File, and other files maintained by the NCIC. 8 U.S.C. § 1105(b)(1).
23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 3

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1   Violation is punishable with five-years imprisonment and a $10,000 fine.  RCW §

2   9A.20.021.  In addition, RCW § 9.41.070 provides in part:

> (1) The chief of police of a municipality or the sheriff of a county shall within thirty days after the filing of an application of any person, issue a license to such person to carry a pistol concealed on his or her person within this state for five years from date of issue, for the purposes of protection or while engaged in business, sport, or while traveling. . . .
> The applicant's constitutional right to bear arms shall not be denied, unless:
> (a) He or she is ineligible to possess a firearm under the provisions of RCW 9.41.040 or 9.41.045;[2] . . .
> (2) The issuing authority shall check with the national crime information center, the Washington state patrol electronic data base, the department of social and health services electronic data base, and with other agencies or resources as appropriate, to determine whether the applicant is ineligible under RCW 9.41.040 or 9.41.045 to possess a firearm and therefore ineligible for a concealed pistol license. . . .
> (4) . . . A person who is not a citizen of the United States shall meet the additional requirements of RCW 9.41.170 and produce proof of compliance with RCW 9.41.170 upon application. . . .

In contrast with Washington law, federal law treats lawful resident aliens identical with citizens.  *United States v. Sandoval-Barajas*, 206 F.3d 853, 856 (9th Cir. 2000), explains:

> the federal statute [18 U.S.C. § 922(g)(5)] applies only to some aliens, those who are "illegally or unlawfully in the United States," but the Washington statute [RCW § 9.41.170(1)] applies to all aliens, "any person who is not a citizen." . . . The federal statute does not prohibit legal aliens from possessing firearms, but the Washington statute does, unless they obtain licenses. Thus a legal alien may be in compliance with the federal statute yet in violation of the Washington statute.

### Facts

Plaintiff Coombes has held an Alien Firearms License (AFL) and a Concealed Pistol License (CPL) since 1999.  His AFL expires on February 19, 2009.  Answer ¶ 15.  His CPL, which must be renewed by the Issaquah Police Department, expires on April 1, 2009.

Defendant Chief of Police Paul D. Ayers will not renew the license without a valid AFL.

---

[2] These provisions prohibit firearm possession by convicted criminals and other dangerous persons.

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 4

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

Coombes is employed in Service and Sales at Wade's Eastside Guns & Bellevue Range, Belleview, WA, and will lose his job if his licenses are not renewed. He has a valuable firearm collection which he will lose if his AFL is not renewed. Dec. Coombes, ¶ 3-5.

Plaintiff Kroes has an Alien Firearms License which expires in 2010. Answer ¶ 17.

Plaintiff Grady, who recently moved to Washington, sought to obtain an application for an AFL, but was refused because the Director of Licensing is no longer issuing such licenses and the application forms were not available. He has a valuable firearm collection which he cannot lawfully possess in Washington without an AFL. Dec. Grady, ¶ 2-4.

Coombes, Kroes, and Grady are members of Plaintiff NRA. There are other lawful resident aliens in Washington who are members of Plaintiffs NRA and/or SAF, own firearms, and are required to have an alien firearm license. Dec. Cox, ¶ 6; Dec. Gottlieb, ¶ 4.

Other than the citizenship requirement, plaintiffs fulfill all other requirements under Washington Law to possess firearms and to obtain a license to carry a concealed pistol. They also meet all requirements under the laws of the United States to possess firearms. Dec. Coombes, ¶ 8-14; Dec. Kroes, ¶ 7-13; Dec. Grady, ¶ 6-12.

The Department of Licensing (DOL) no longer will issue an alien firearm license pursuant to RCW § 9.41.170. Answer ¶ 22. Its website states:

> We are unable to issue alien firearms licenses at this time. The Federal Bureau of Investigation (FBI) has told law enforcement agencies it is against federal law to use federal databases for background checks if they share the results with a non-criminal justice agency such as the Department of Licensing. As a result: Law enforcement agencies cannot perform the background checks required by state law for issuing an alien firearms licenses.  We cannot complete the application process or issue alien firearms licenses. http://www.dol.wa.gov/business/firearms/faalien.html

Answer ¶ 22.

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 5

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

1    By email dated August 6, 2008, Bruce W. Tanaka, Firearms Unit Program Manager,

2    Department of Licensing, wrote Coombes that the DOL cannot access FBI criminal history

3    records through local law enforcement and thus would not issue or renew an Alien Firearm

4    License to Coombes.  Tanaka warned: "DOL's hands are tied.  I would recommend you not

5    be in possession of your weapons when and if your license expires. . . . [I]f charged and

6    convicted of a class C felony, you would never be able to be in possession of a firearm and

7    it's a deportable offense."  Answer ¶ 23.

8    As a proximate cause of RCW §§ 9.41.170 and 9.41.070, the refusal of the

9    Department of Licensing to issue Alien Firearm Licenses, and the resultant inability of the

10   Chief of Police to issue Concealed Pistol Licenses to non-citizens, Plaintiffs Coombes, Kroes,

11   and Grady, together with other members of Plaintiffs NRA and SAF who are lawful resident

12   aliens, will suffer irreparable injury in that they will imminently[3] lose valuable property and

13   will no longer be able to possess firearms for recreational purposes and lawful self defense.

14   In addition, Coombes will lose his job.

### ARGUMENT

15

16   "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

17   on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

18   that the balance of equities tips in his favor, and that an injunction is in the public interest."

19   *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374 (2008).

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

20

21   **A. Washington's Firearms Prohibitions Deny the Equal**
     **Protection of the Laws to Lawful Resident Aliens**

22

---

[3]  Except for Kroes, whose AFL expires in 2010.

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 6

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

1

2      RCW § 9.41.170(1) and § 9.41.070(1) and Defendants' refusal to issue firearm

3   licenses thereunder deny to Plaintiffs the equal protection of the laws in violation of the

4   Fourteenth Amendment.  Plaintiffs are likely to prevail on the merits of this claim, which is

5   Count Two of the Complaint.

6      "[T]he term 'person' in this [Fourteenth Amendment] context encompasses lawfully

7   admitted resident aliens as well as citizens of the United States and entitles both citizens and

8   aliens to the equal protection of the laws of the State in which they reside." *Graham v.*

9   *Richardson*, 403 U.S. 365, 371 (1971) (denial of welfare benefits).  "[C]lassifications based

10  on alienage . . . are inherently suspect and subject to close judicial scrutiny." *Id.* at 372.  This

11  is the case "whether or not a fundamental right is impaired." *Id.* at 373.

12      Similarly, *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 421 (1948),

13  invalidated a state law excluding "aliens who are lawful residents of the State from making a

14  living by fishing in the ocean off its shores while permitting all others to do so." "*Takahashi*

15  and *Graham* stand for the broad principle that 'state regulation not congressionally sanctioned

16  that discriminates against aliens lawfully admitted to the country is impermissible if it

17  imposes additional burdens not contemplated by Congress.'" *Toll v. Moreno*, 458 U.S. 1, 12-

18  13 (1982) (invalidating state law denying tuition benefits to nonimmigrant aliens)

19      In contrast to federal laws, "State alienage classifications create a 'suspect class' to

20  which we apply strict scrutiny." *United States v. Lopez-Flores*, 63 F. 3d 1468, 1473 (9th Cir.

21  1995).  Such "overriding national interests" as immigration and foreign relations "justify

22  selective federal legislation that would be unacceptable for an individual State." *Id.*

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 7

tl300101 12/30/08

1    In a case similar to the case at bar, a state law which discriminated against lawful

2    resident aliens in issuance of firearm licenses was held violative of equal protection. *Say v.*

3    *Adams*, 2008 WL 718163, 2008 U.S. Dist. LEXIS 20183 (W.D. Ky. 2008) (Case 3:07-cv-

4    00377-TBR, copy attached hereto for the Court's convenience, Attachment A).  State law

5    authorized the state police to issue and renew licenses to carry a concealed deadly weapon

6    ("CCDW license"), applications for which were obtained from the county sheriff of one's

7    residence.  Only U.S. citizens were eligible for a license.  2008 WL 718163 at *1.

8    The citizenship requirement was passed to gain federal approval to allow a CCDW

9    license holder to purchase a firearm without a background check by the National Instant

10   Criminal Background Check System ("NICS").  A NICS check for a non-citizen requires an

11   "Illegal Alien Query" ("IAQ") through the U.S. Immigration and Customs Enforcement.  The

12   state police conducted a NICS check for a CCDW license, but not an IAQ check.  When

13   Plaintiff Say, an alien with lawful permanent residence, attempted to apply for a CCDW

14   license, the county sheriff told him that he was ineligible due to the citizenship requirement.

15   Say then sued the head of the state police and the sheriff. *Id.*

16   Federal law requires a NICS check for receipt of a firearm, but exempts purchasers

17   who have certain state-issued permits, such as a CCDW license.  18 U.S.C. § 922(t)(1), (3).

18   The citizenship requirement was imposed so that the state police could conduct their own non-

19   NICS background check to issue such licenses, but in doing so they were unable to check the

20   IAQ for lawful alien status. *Say* at *3.  The court held, *id.*:

21   > The Court cannot find that a state's interest in substituting a state background
22   > check for a federal background check is compelling enough to justify creating
     > a classification that discriminates against a suspect class.

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 8

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1
2
3
4
5

Furthermore, the citizenship provision is not narrowly tailored to achieve this governmental interest. A blanket prohibition discriminating against aliens is not precisely drawn to achieve the goal of facilitating firearms purchases when there exists a nondiscriminatory way to achieve the same goals. As discussed below, if the Kentucky State Police undertakes some administrative burden, it is possible to allow permanent resident aliens to obtain a CCDW license, and still meet the requirements necessary to allow CCDW holders to avoid the NICS inquiry at the time of purchase.

6

*State v. Hernandez-Mercado*, 124 Wash. 2d 368, 378, 879 P.2d 283 (1994), which

7

involved an unlawful alien, flatly stated that "RCW 9.41.170 is not necessary to safeguard the

8

State's interest in keeping 'firearms out of dangerous hands'." The state's public safety

9

argument was "weak," but the record was too limited to find the statute facially violative of

10

equal protection. *Id.* at 380.

11

By contrast, Plaintiffs here are lawful permanent resident aliens, and alien firearm

12

licenses are no longer being issued. As applied now, RCW § 9.41.170 is an absolute

13

prohibition on possession of a firearm by an alien, like similar state laws which have been

14

invalidated on equal protection grounds. *Chan v. City of Troy*, 559 N.W.2d 374, 379-80

15

(Mich. Ct. App. 1997), held that "the statute, which prohibits the purchase of pistols by all

16

noncitizens, fails to distinguish between dangerous noncitizens and those noncitizens who

17

would pose no particular threat if allowed to purchase the weapons." *Id.* at 380. "Had the

18

statute excluded only illegal aliens, as opposed to all noncitizens, it may well have passed

19

constitutional muster." *Id.* n.3.[4]

20
21
22
23

[4] *See also People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936) ("the act wholly disarms aliens for all purposes. The state . . . cannot disarm any class of persons or deprive them of the right . . . to bear arms in defense of home, person, and property."); *Sandiford v. Commonwealth*, 217 Va. 117, 118-19, 225 S.E.2d 409 (1976) (invalidating presumption for possession of sawed-off shotgun by alien: "We see no rational connection between a person's place of birth and his disposition to commit offensive or aggressive acts."); *State v. Poolsawas Chumphol*, 97 Nev. 440, 442, 634 P.2d 451 (1981) (invalidating prohibition on possession of pistol: "A person does not exhibit a tendency toward crime merely because he or she is a noncitizen"); *People v. Rappard*, 28 Cal.

1    In sum, Plaintiffs are likely to prevail on their equal protection claim.

2    **B. Washington's Firearm Prohibitions Deny Lawful Resident Aliens the**
     **Full and Equal Benefit of Laws and Proceedings for the Security of**
3    **Person and Property, Contrary to 42 U.S.C. § 1981(a)**

4    RCW §§ 9.41.170(1) and 9.41.070(1) and Defendants' refusal to issue firearm licenses

5    thereunder violate 42 U.S.C. §1981(a), which provides in part: "All persons within the

6    jurisdiction of the United States shall have the same right in every State . . . to the full and

7    equal benefit of all laws and proceedings for the security of person and property as is enjoyed

8    by white citizens . . . ." Plaintiffs are likely to prevail on this claim, which is Count Three of

9    the Complaint.

10   Originally enacted as the Civil Rights Act of 1866, the provision only protected

11   "citizens," but was amended in 1870 to protect "persons." "Congress chose with care the

12   word 'persons' to replace 'citizens' in the statute when, in reenacting the 1866 Civil Rights

13   Act, it extended the safeguards of the civil rights statutes to aliens." *Sagana v. Tenorio*, 384

14   F.3d 731, 737 (9th Cir. 2004). *Takahashi*, 334 U.S. at 419-20, explained:

15   > The protection of this section has been held to extend to aliens as well as to
16   > citizens. Consequently the section and the Fourteenth Amendment on which it
     > rests in part protect "all persons" against state legislation bearing unequally
     > upon them either because of alienage or color. . . . The Fourteenth Amendment
17   > and the laws adopted under its authority thus embody a general policy that all
     > persons lawfully in this country shall abide "in any state" on an equality of
18   > legal privileges with all citizens under non-discriminatory laws.

19   Lawfully admitted resident aliens "are entitled to the full and equal benefit of all state

20   laws for the security of persons and property." *Graham*, 403 U.S. at 378. This would include

21   not only the lawful possession of firearms, but also the ability to work, as does Coombes, in a

22

23   App.3d 302, 304-05, 104 Cal.Rptr. 535 (1972) (invalidating prohibition on possession of concealable firearm: "a person does not . . . show a tendency toward crime simply because he is not a citizen of this country.").

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 10

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1  firearms business just as citizens may do. "The assertion of an authority to deny to aliens the

2  opportunity of earning a livelihood when lawfully admitted to the state would be tantamount

3  to the assertion of the right to deny them entrance and abode, for in ordinary cases they cannot

4  live where they cannot work." *Id.* at 379 (citation omitted).

5      Washington's provisions which recognize the right of citizens to possess firearms

6  constitute "laws and proceedings for the security of person and property" in the meaning of

7  §1981(a). Wash. Const., Art. I, § 24, provides: "The right of the individual citizen to bear

8  arms in defense of himself, or the state, shall not be impaired . . . ." RCW § 9.41.070(1)

9  provides for a license to carry a concealed pistol "for the purposes of protection or while

10  engaged in business, sport, or while traveling . . . ." RCW § 9.41.170 recognizes the same

11  interests by *not* making it a felony for a *citizen* to possess a firearm without a special license.

12      A purpose of the Civil Rights Act of 1866 was to prevent states from prohibiting

13  firearm possession to disfavored classes. See discussion below of *District of Columbia v.*

14  *Heller*, 128 S. Ct. 2783, 2809-10 (2008). A companion enactment with similar phraseology

15  was the Freedmen's Bureau Act of 1866, which stated in part: "[T]he right . . . to have full and

16  equal benefit of all laws and proceedings concerning personal liberty, personal security, and

17  the acquisition, enjoyment, and disposition of estate, real and personal, including the

18  constitutional right to bear arms, shall be secured to and enjoyed by all the citizens . . .

19  without respect to race or color, or previous condition of slavery . . . ." § 14, 14 Stat. 176-177

20  (1866), quoted in *Heller*, 128 S. Ct. at 2810 (noting that "The understanding that the Second

21  Amendment gave freed blacks the right to keep and bear arms was reflected in congressional

22  discussion of the bill").

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 11

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1   The Freedmen's Bureau Act "re-enacted, in virtually identical terms for the

2   unreconstructed Southern States, the rights granted in §1 of the Civil Rights Act of 1866."

3   *Georgia v. Rachel*, 384 U.S. 780, 797 n.26 (1966). *See Jones v. Alfred H. Mayer Co.*, 392

4   U.S. 409, 424 n.31 (1968) (noting identical objectives of Freedmen's Bureau Bill and Civil

5   Rights Act). Section 1981 not only forbids discrimination, it also protects substantive rights.[5]

6   "If we are to give [the law] the scope that its origins dictate, we must accord it a sweep as

7   broad as its language." *Id.* at 437 (brackets in original).[6]

8       In sum, Plaintiffs are likely to prevail on their claim that the discriminations in RCW

9   §§ 9.41.170(1) and 9.41.070(1) and the unavailability of licenses thereunder violate § 1981(a).

10  **C. Washington's Firearm Prohibitions Infringe on the Right of Lawful Resident
    Resident Aliens to Possess Arms Under the Second and Fourteenth Amendments**

11

12      RCW §§ 9.41.170(1) and 9.41.070(1) and Defendants' refusal to issue firearm licenses

13  thereunder, as alleged in Count One of the Complaint, infringe on Plaintiffs' Second

14  Amendment right to keep and bear arms, which applies to the States and political subdivisions

15  thereof through the Fourteenth Amendment.  This guarantees an individual right to possess

16  firearms by law-abiding persons, including lawful permanent resident aliens.

17  *1. Lawful Permanent Resident Aliens are Protected by the Second Amendment*

18      Lawful resident aliens are among "the people" protected by the Second Amendment.

19  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990), explained:

20  _____

    [5] "Senator Trumbull's bill would, as he pointed out, 'destroy all [the] discriminations' embodied in the Black
21  Codes, but it would do more:  It would affirmatively secure for all men, whatever their race or color, what the
    Senator called the 'great fundamental rights'. . . ." *Jones*, 392 U.S. at 432.

22  [6] *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 672 (1987) (Brennan, J., joined by Marshall and Blackmun,
23  JJ., concurring in part and dissenting in part) (noting that the Black Codes "forbade owning firearms").

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)-- Page 12

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

1
2
3
4

The Second Amendment protects "the right of the people to keep and bear Arms" . . . . While this textual exegesis is by no means conclusive, it suggests that "the people" protected by the Fourth Amendment, and by the First and Second Amendments, . . . refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.

5
6
7
8
9

More specifically, "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id.* at 271. "But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders." *Id.* (citation omitted).[7]

10
11
12
13

In holding that the Second Amendment guarantees the individual right to possess firearms, *Heller*, 128 S. Ct. at 2796, recalled the above formulation that "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."

14
15
16
17

*Heller* overrules this Circuit's rulings that the Amendment protects only a "collective" state right to maintain militias and not an individual right. *See Hickman v. Block*, 81 F.3d 98 (9th Cir. 1996), *cert. denied*, 519 U.S. 912 (1996); *Silveira v. Lockyer*, 312 F.3d 1052, *reh. denied*, 328 F.3d 567 (9th Cir. 2003), *cert. denied*, 540 U.S. 1046 (2003).

18
19
20
21

2. *The Second Amendment Applies to the States Through the Fourteenth Amendment*

Nineteenth-century cases stating that the First and Second Amendments do not apply to the States "did not engage in the sort of Fourteenth Amendment inquiry required by our later cases." *Heller*, 128 S. Ct. at 2813 n.23. Relying on those same cases, *Fresno Rifle &*

22
23

[7] "Aliens who are lawfully present in the United States are among those 'people' who are entitled to the protection of the Bill of Rights . . . ." *Id.* at 279 (Stevens, J., concurring).

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 13

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1  *Pistol Club v. Van de Kamp*, 965 F.2d 723, 729-31 (9th Cir. 1992), held that the Second

2  Amendment is not incorporated into the Fourteenth Amendment so as to protect the right to

3  keep and bear arms from State infringement. *Heller* supercedes *Fresno Rifle*.[8]

4                a. The Right To Keep And Bear Arms Is A Fundamental Right

5      "By the time of the founding, the right to have arms had become fundamental for

6  English subjects." *Heller*, 128 S. Ct. at 2798. Moreover, "the Second Amendment, like the

7  First and Fourth Amendments, codified a *pre-existing* right." *Id.* at 2797.

8      The explicit nature of the right precludes use of the rational-basis standard of review.

9  "Obviously, the same test could not be used to evaluate the extent to which a legislature may

10  regulate a specific, enumerated right, be it the freedom of speech, the guarantee against

11  double jeopardy, the right to counsel, or the right to keep and bear arms." *Id.* at 2818 n.27.

12      Noting that "the inherent right of self-defense has been central to the Second

13  Amendment right," *Heller* continued: "The handgun ban amounts to a prohibition of an entire

14  class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose.

15  The prohibition extends, moreover, to the home, where the need for defense of self, family,

16  and property is most acute." *Id.* at 2817-18. The prohibitions and actions here are far worse –

17  for aliens, all firearms of all classes are banned, in the home and everywhere else.

18

19

20

---

21  [8]  "Where intervening Supreme Court authority is clearly irreconcilable with our prior circuit authority" –
   including when the irreconcilability is in the "mode of analysis" and not just in square conflict with the specific

22  holdings – "a three-judge panel of this court and district courts should consider themselves bound by the
   intervening higher authority and reject the prior opinion of this court as having been effectively overruled."

23  *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003).

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 14

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1

   b.  The Fourteenth Amendment Was Intended To Protect the
       Right To Keep and Bear Arms From State Infringement

2

3       The Fourteenth Amendment was intended to supercede *Barron v. Mayor of Baltimore*,

7 Pet. 243, 8 L.Ed. 672 (1833), which held that the Bill of Rights did not apply to the states.[9]

4

5   "In the aftermath of the Civil War, there was an outpouring of discussion of the Second

Amendment in Congress and in public discourse, as people debated whether and how to

6

secure constitutional rights for newly free slaves." *Heller*, 128 S. Ct. at 2809-10, citing S.

7

Halbrook, *Freedmen, the Fourteenth Amendment, and the Right to Bear Arms, 1866-1876*

8

(1998).  This included Second Amendment rights which were violated by the Southern Black

9

Codes. *Id.* at 2810.[10]

10

11      The Freedmen's Bureau Act of 1866 protected the right to "personal liberty, personal

security, and . . . estate, . . . including the constitutional right to bear arms . . . ." *Id.* at 2810.

12

This was passed by over two-thirds vote of the same Congress that proposed the Fourteenth

13

Amendment,[11] and sought to guarantee the same rights.[12] *Id.* ("With respect to the proposed

14

Amendment, Senator Pomeroy described as one of the three 'indispensable' 'safeguards of

15

liberty . . . under the Constitution' a man's 'right to bear arms for the defense of himself and

16

17

18  [9]  "Representative [John] Bingham . . . explained that he had drafted § 1 of the Fourteenth Amendment with the
    case of *Barron v. Mayor of Baltimore*, 7 Pet. 243 (1833), especially in mind." *Monell v. Dep't of Social Services*,
19  436 U.S. 658,686-87 (1978).  On the same page of that speech, Bingham characterized "the right of the people to
    keep and bear arms" as one of the "limitations upon the power of the States . . . made so by the Fourteenth
20  Amendment." Cong. Globe, 42nd Cong., 1st Sess., App. 84 (Mar. 31, 1871).

21  [10] *See Bell v. Maryland*, 378 U.S. 226, 247-48 & n. 3 (1964) (Douglas, J., concurring) (Fourteenth Amendment
    intended to eradicate the black codes, under which "Negroes were not allowed to bear arms.").

22  [11] Halbrook, *Freedmen*, 41-42.

23  [12] *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 423-24, 436 (1968).

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 15

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1   family'"). The Fourteenth Amendment was intended to protect Second Amendment rights

2   from State infringement.

3             c. Nineteenth-Century Cases "Did Not Engage in the Sort of
                Fourteenth Amendment Inquiry Required by Our Later Cases"

4

5       *Heller* clarifies that the Court has left open whether the Second Amendment applies to

6   the states through the Fourteenth Amendment, and implies that it does. Nineteenth-century

7   cases holding that the First, Second, and Fourth Amendments do not directly apply to the

8   states did not consider whether such rights are incorporated into the Fourteenth Amendment.

9       *United States v. Cruikshank,* 92 U. S. 542, 553 (1876), held that "members of a white

10  mob" could not be convicted "for depriving blacks of their right to keep and bear arms," since

11  the Second Amendment only applied to the United States. *Heller,* 128 S. Ct. at 2812. "With

12  respect to *Cruikshank's* continuing validity on incorporation, . . . we note that *Cruikshank* also

13  said that the First Amendment did not apply against the States and did not engage in the sort

14  of Fourteenth Amendment inquiry required by our later cases." *Id.* at 2813 n.23.

15      *Heller* added that two later decisions "reaffirmed that the Second Amendment applies

16  only to the Federal Government." *Id.* (citing *Presser v. Illinois,* 116 U. S. 252, 265 (1886),

17  and *Miller v. Texas,* 153 U. S. 535, 538 (1894)) . *Presser* made no mention of the Fourteenth

18  Amendment in this discussion. 116 U.S. at 265. *Miller* agreed that the Second and Fourth

19  Amendments did not apply directly to the states, but refused to consider whether they applied

20  to the states through the Fourteenth Amendment. 153 U.S. at 538.[13]

21  _____

22  [13] "If the Fourteenth Amendment limited the power of the States as to such rights [to bear arms and against
warrantless searches] as pertaining to citizens of the United States, we think it was fatal to this claim that it was

23  not set up in the trial court." *Id.*

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)-- Page 16

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1    Since these cases "did not engage in the sort of Fourteenth Amendment inquiry

2    *required* by our later cases," *Heller*, 128 S. Ct. at 2813 n.23, this Court must do so.

3            d. *Heller* Supercedes Circuit Precedent Rejecting Incorporation

4    *Heller* supercedes the Ninth Circuit's decision in *Fresno Rifle*, 965 F.2d at 729-31,

5    which rejected incorporation of the Second Amendment into the Fourteenth Amendment.

6    *Fresno Rifle* stated that since *Miller* predated the first incorporation case, "there is no reason

7    to believe that *Miller* left open the incorporation question any more than *Cruikshank* or

8    *Presser.*" *Id.* at 730. Yet none of these cases even considered the incorporation question.

9    As the Ninth Circuit noted in *Silveira*, 312 F.3d at 1067, *Cruikshank* and *Presser* were

10    "decided before the Supreme Court held that the Bill of Rights is incorporated by the

11    Fourteenth Amendment's Due Process Clause," adding: "*Cruikshank* and *Presser* found that

12    the Second Amendment restricted the activities of the federal government, but not those of the

13    states. . . . *Cruikshank* and *Presser* rest on a principle that is now thoroughly discredited."[14]

14    *See Nordyke v. King*, 319 F.3d 1185, 1193 & n.3 & 4 (9th Cir. 2003) (Gould, C.J., specially

15    concurring) ("We should . . . revisit whether the requirements of the Second Amendment are

16    incorporated into the Due Process Clause of the Fourteenth Amendment.").

17    Moreover, "in interpreting a constitutional provision, the fundamental principle of

18    construction is to give the provision the effect intended by the framers and the people

19    adopting it." *Tom v. Sutton*, 533 F.2d 1101, 1105 (9th Cir. 1976). *Heller*'s statement that

20    "nothing in our precedents forecloses our adoption of the original understanding of the

21

22    [14] *Id.*, citing *United States v. Emerson,* 270 F.3d 203,221 n.13 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002) (noting that *Cruikshank, Presser,* and *Miller* "came well before the Supreme Court began the process of

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 17

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

1   Second Amendment" also applies to the Fourteenth Amendment, and indeed *Heller* adds: "It

2   should be unsurprising that such a significant matter has been for so long judicially

3   unresolved. For most of our history, the Bill of Rights was not thought applicable to the

4   States . . . ." 128 S. Ct. at 2816.[15]

5       *Fresno Rifle* refused to consider what it characterized as "remarks by various

6   legislators during passage of the Freedmen's Bureau Act of 1866, the Civil Rights Act of

7   1866, and the Civil Rights act of 1871." 965 F.2d at 730. This included, for instance, Senator

8   Jacob M. Howard's introduction of the Fourteenth Amendment which referred to "the

9   personal rights guaranteed and secured by the first eight amendments of the Constitution; such

10  as . . . the right to keep and bear arms. . . . The great object of the first section of this

11  amendment is, therefore, to restrain the power of the States and compel them at all times to

12  respect these great fundamental guarantees." Cong. Globe, 39th Cong., 1st Sess. 2766 (May

13  23, 1866), quoted in *Duncan v. Louisiana*, 391 U.S. 145, 166-67 (1968) (Black, J.,

14  concurring).[16]

15       Moreover, far more was involved than "remarks" – the Freedmen's Bureau Act, *supra*,

16  protected from State infringement "personal liberty, personal security, and . . . estate . . .,

---

18  incorporating certain provisions of the first eight amendments into the Due Process Clause of the Fourteenth Amendment, and . . . they ultimately rest on a rationale equally applicable to all those amendments").

19  [15] "The Court has not hesitated to re-examine past decisions according the Fourteenth Amendment a less central
20  role in the preservation of basic liberties than that which was contemplated by its Framers when they added the Amendment to our constitutional scheme." *Malloy v. Hogan*, 378 U.S. 1, 5 (1964).

21  [16] "A substantial part of the debate in Congress on the Fourteenth Amendment was its necessity to enable blacks to protect themselves from White terrorism and tyranny in the South. . . . When the state itself abets organized
22  terrorism, the right of the people to keep and bear arms against a tyrant becomes inseparable from the right to self-defense." *Silveira*, 328 F.3d at 577 (Kleinfeld, C.J., joined by C.J.s Kozinski, O'Scannlain, & T.G. Nelson,
23  dissenting from denial of rehearing en banc).

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 18

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1  including the constitutional right to bear arms . . . ." The Fourteenth Amendment also protects

2  from state infringement the "indefeasible right of personal security, personal liberty and

3  private property." *Griswold v. Connecticut*, 381 U.S. 479, 485 n. (1965). No state may

4  violate the "constitutional right to personal security, a liberty interest protected by the

5  fourteenth amendment."[17] *Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir. 1989). At the core

6  of the right to personal security is the right to have arms: "The Second Amendment embodies

7  the right to defend oneself and one's home against physical attack." *United States v. Gomez*,

8  92 F.3d 770, 774 n.7 (9th Cir. 1996).

9       In sum, *Heller* supersedes the *Fresno Rifle* holding that the Second Amendment is not

10  incorporated into the Fourteenth Amendment, in that it relied on cases that "did not engage in

11  the sort of Fourteenth Amendment inquiry required by our later cases." *Heller*, 128 S. Ct. at

12  2813 n.23.

13                 e. The "Fourteenth Amendment Inquiry Required By Our Later
                      Cases" Mandates Incorporation of the Second Amendment

14

15       Most substantive Bill of Rights guarantees have been incorporated because they are

16  explicitly recognized and thus fundamental.[18] A right is "fundamental" if it is "explicitly or

17

18  [17] *See also United States v. Verdugo-Urquidez*, 856 F.2d 1214, 1220 (9th Cir. 1988) ("The absolute rights of individuals may be resolved into the right of personal security, the right of personal liberty, and the right to

19  acquire and enjoy property.") (quoting 2 J. Kent, *Commentaries* 1 (1827)), *rev'd on other grounds* 494 U.S. 259 (1990).

20  [18] *See Chicago B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 237 (1897) (Just Compensation Clause of Fifth Amendment among the"implied reservations of individual rights . . . which are respected by all governments

21  entitled to the name."); *Gitlow v. New York*, 268 U.S. 652, 666 (1925) ("freedom of speech and of the press . . . are among the fundamental personal rights and 'liberties' protected by the due process clause of the 14th

22  Amendment from impairment by the states."); *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937) ("The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental.");

23  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) ("The Fourteenth Amendment has rendered the legislatures of

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 19

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1   implicitly protected by the Constitution, thereby requiring strict judicial scrutiny." *San*

2   *Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17, 33 (1973).  No constitutional right is

3   "less 'fundamental' than" others, and "we know of no principled basis on which to create a

4   hierarchy of constitutional values . . . ." *Valley Forge Christian Coll. v. Americans United for*

5   *Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982).[19]

6   　　　*Planned Parenthood v. Casey*, 505 U.S. 833, 848 (1992), explains that "the full scope

7   of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the

8   precise terms of the specific guarantees elsewhere provided in the Constitution," including

9   free speech and press and "the right to keep and bear arms."

10   　　Most procedural Bill of Rights guarantees have also been incorporated,[20] excluding

11   those not inherently required for a fair procedure.[21]  "In resolving conflicting claims

12   concerning the meaning of this spacious language, the Court has looked increasingly to the

13   Bill of Rights for guidance; many of the rights guaranteed by the first eight Amendments to

14   the Constitution have been held to be protected against state action by the Due Process Clause

15   of the Fourteenth Amendment." *Duncan v. Louisiana*, 391 U.S. 145, 147-48 (1968) (Sixth

---

17   the states as incompetent as Congress to enact such laws [respecting an establishment of religion or prohibiting the free exercise thereof]."); *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947) (same for Establishment Clause).

18   [19] "To view a particular provision of the Bill of Rights with disfavor . . . is to disrespect the Constitution." *Ullmann v. United States*, 350 U.S. 422, 428-29 (1956).

20   [20] *See Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949) (Fourth Amendment rights "implicit in 'the concept of ordered liberty'" and based on "the conception of human rights enshrined in the history and the basic constitutional documents of English-speaking peoples."), *overruled on other grounds, Mapp v. Ohio*, 367 U.S. 643 (1961).

21   [21] *See Hurtado v. California*, 110 U.S. 516, 532 (1884) (Fifth Amendment right to indictment by grand jury not required because due process "must be held to guaranty, not particular forms of procedure, but the very substance of individual rights to life, liberty, and property."); *Curtis v. Loether*, 415 U.S. 189, 192 n.6 (1974) (Seventh Amendment right to jury trial in civil cases where the value in controversy exceeds $20).

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 20

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1  Amendment right to jury trial in a criminal case incorporated).[22]  Like other substantive

2  guarantees, the Second Amendment is not subject to the question of whether a particular

3  procedure is necessary for due process.

4        In sum, since the Second Amendment encompasses an explicitly-guaranteed,

5  substantive right, it meets the standards of the Supreme Court's jurisprudence on

6  incorporation of fundamental rights into the Fourteenth Amendment.  Given *Heller*'s holding

7  that a handgun ban violates the Second Amendment, Washington's ban on all firearms

8  possession by lawful resident aliens cannot stand.

9  **II. PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE INJURY**

10       Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief,"

11  *Winter*, 129 S.Ct. at 374.  Threatened with serious criminal penalties involving arrest,

12  prosecution, and incarceration, they stand to loose valuable property and, in the case of

13  Coombes, his job.  They will not be able to possess firearms for any reason, including self

14  defense.

15       "[A] plaintiff can demonstrate that a denial of an injunction will cause irreparable

16  harm if the claim is based upon a violation of plaintiff's constitutional rights."  *Overstreet v.*

17  *Lexington-Fayette Urban County Gov't.,* 305 F.3d 566, 578 (6th Cir. 2002).  *See*

18  *Sammartano v. First Judicial District Court Carson City*, 303 F.3d 959, 973 (9th Cir. 2002)

19  ("'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably

20  constitutes irreparable injury' for purposes of the issuance of a preliminary injunction"); *Tom*

21  *v. Sutten*, 533 F.2d 1101, 1106 (9th Cir. 1976) ("all constitutional provisions are of equal

22

23  [22] *Accord Benton v. Maryland*, 395 U.S. 784, 794 (1969) ("the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage").

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 21

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1   dignity"). "[T]he violation of the Equal Protection Clause qualifies as an irreparable injury . .

2   . ." *Say*, 2008 WL 718163, *3.

3   ### III. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR

4   In this case, "the balance of equities tips in [Plaintiffs'] favor," *Winter*, 129 S.Ct. at

5   374. Being lawfully admitted for permanent residence and by having previous firearm

6   licenses, Plaintiffs have been subjected to intensive background checks. No legitimate State

7   interest is served by the denial of such licenses to lawful permanent residents or by applying

8   criminal penalties against them for not having such licenses.

9   *Say* found that an injunction would require the state police to conduct a manual case-

10  by-case background check on alien CCDW applicants, as well as update its electronic

11  database software, amend its forms, and change its record check procedures. However, "any

12  harm to others caused by the granting of a preliminary injunction is not substantial enough to

13  justify the violation of Plaintiff's constitutional rights." *Say*, 2008 WL 718163, *4.

14  *Say* enjoined enforcement of the state law requiring applicants for a license to carry a

15  concealed weapon to be a U.S. citizen. Order Granting Plaintiff's Motion for Preliminary

16  Injunction, *Say v. Adams* (Case 3:07-cv-00377-TBR, copy attached hereto for the Court's

17  convenience, Attachment B). Defendants were also ordered to furnish Say with a license

18  application and to "accept and process the application and issue the license in accordance with

19  the established procedures for processing such application and issuing such license, but

20  without requiring proof of United States citizenship." *Id.*

21  Any additional administrative burden required for Defendant Director of Licensing

22  Luce to issue or renew Alien Firearms Licenses would not be substantial. Enjoining

23

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 22

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08

1 | Defendant Police Chief Ayers from enforcement of RCW § 9.41.170 against Coombes and

2 | similarly-situated persons would only remove a burden.

3 | **IV. THE PUBLIC INTEREST IS TO UPHOLD CONSTITUTIONAL RIGHTS**

4 | The injunction sought "is in the public interest." *Winter*, 129 S.Ct. at 374.

5 | "Generally, public interest concerns are implicated when a constitutional right has been

6 | violated, because all citizens have a stake in upholding the Constitution." *Preminger v.*

7 | *Principi*, 422 F.3d 815, 826 (9th Cir. 2005). "[I]t is always in the public interest to prevent the

8 | violation of a party's constitutional rights." *Sammartano*, 303 F.3d at 974 (citation omitted).

9 | The *Say* injunction was found to be in the public interest because "Plaintiff is asserting a

10 | violation of the Equal Protection Clause." *Say*, 2008 WL 718163, *4.

11 | No public interest exists in denying firearm licenses to or prohibiting firearm

12 | possession by lawful permanent resident aliens. No such discrimination exists in the federal

13 | Gun Control Act, which prohibits firearm possession only to aliens who are (1) "illegally or

14 | unlawfully in the United States" or (2) "admitted to the United States under a nonimmigrant

15 | visa," 18 U.S.C. § 922(g)(5), and the latter prohibition is lifted if the alien is here "for lawful

16 | hunting or sporting purposes or is in possession of a hunting license." § 922(y)(2)(A).

17 | Most alien gun restrictions were passed by the states in the early twentieth century

18 | "during an era of irrational fear and prejudice against immigrants." P. Gulasekaram, "Aliens

19 | With Guns: Equal Protection, Federal Power, & the Second Amendment," 92 Iowa L. Rev.

20 | 891, 908-09 (2007). RCW 9.41.170 was enacted in 1911. *Hernandez-Mercado*, 124 Wash.

21 | 2d at 376. "There is nothing in the 'statutory scheme' which establishes that the status of

22 |

23 |

MOTION AND MEMORANDUM
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 23

Stephen P. Halbrook
Attorney at Law
3925 Chain Bridge Road, Suite 403
Fairfax, VA 22030
Tel. (703) 352-7276 • Fax (703) 359-0938

1   being foreign-born of itself creates 'dangerous hands' in the context of firearms control." *Id.*

2   at 377-78.

3                                **CONCLUSION**

4         The Court should issue a preliminary injunction requiring Defendant Director of

5   Licensing Liz Luce forthwith to renew or issue alien firearm licenses to Plaintiffs Adrian J.

6   Coombes, Philip Grady, and such other lawful permanent resident aliens who may apply

7   pursuant to RCW § 9.41.170.  The Court should further issue a preliminary injunction

8   restraining Defendant Police Chief Paul D. Ayers from enforcement of RCW § 9.41.170 and

9   RCW § 9.41.070(4) as applied to lawful permanent resident aliens.

10                          Respectfully Submitted,  *Dec. 30, 2008*

11                          National Rifle Association of America, Inc.,
                            Second Amendment Foundation, Inc.,
12                          Adrian J. Coombes, Roelof Kroes, and Philip Grady,
                            Plaintiffs
13                          By Counsel

14                          *Stephen P. Halbrook*
                            Stephen P. Halbrook, *Pro Hac Vice*
15                          3925 Chain Bridge Road, Suite 403
                            Fairfax, VA  22030
16                          Tel. (703) 352-7276
                            Fax (703) 359-0938
17                          Email: Protell@aol.com

18                          *Carl J. Carlson*
                            Carl J. Carlson
19                          Carlson & Bennett, P.S.
                            1601 Fifth Avenue, Suite 2150
20                          Seattle, WA 98101
                            Tel. (206) 621-1320
21                          Fax (206) 621-1151
                            Email: carl@carlsonlaw.com

22
                            Attorneys for Plaintiffs
23

MOTION AND MEMORANDUM                              Stephen P. Halbrook
FOR PRELIMINARY INJUNCTION (C08-1613)– Page 24         Attorney at Law
                                                 3925 Chain Bridge Road, Suite 403
                                                      Fairfax, VA 22030
                                              Tel. (703) 352-7276 • Fax (703) 359-0938

tl300101 12/30/08